UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:09-cv-00095-R

**GRIDER DRUG, LLC, et al.**                                                           **PLAINTIFFS**

v.

**EXPRESS SCRIPTS, INC.;**
**PGBA, LLC, d/b/a Tricare;**
**KELLY HENSLEY; JOHN DUDINSKIE;**
**and HUMANA, INC.**                                                                   **DEFENDANTS**

### MEMORANDUM OPINION

This matter comes before the Court upon Plaintiffs' Motion for Remand to Circuit Court (DN 13). Defendant Express Scripts, Inc., Defendants Humana, Inc. and PGBA, LLC, and Defendants Kelly Hensley and John Dudinskie have each responded (DN 19, 20, 21). Plaintiffs have replied (DN 23). This matter is now ripe for adjudication. For the reasons that follow, Plaintiffs' Motion is DENIED.

Also before the Court is Defendant Express Scripts, Inc.'s Motion to Dismiss (DN 7), to which Plaintiffs have responded (DN 14) and Express Scripts, Inc. has replied (DN 17). Defendants Humana, Inc. and PGBA, LLC, and Defendants Kelly Hensley and John Dudinskie have each also moved to dismiss (DN 11 and DN 12). Plaintiffs have filed a response (DN 16).[1] No reply was filed. These matters are now ripe for adjudication. For the reasons that follow, Defendants' motions (DN 7, 11 and 12) are GRANTED.

### BACKGROUND

This action arises out of the termination of a contract. Plaintiff Grider Drug, LLC ("Grider Drug") is a company which operates pharmacies in Russell County, Kentucky.

---

[1] Plaintiffs' response, Docket No. 16, is identical to their prior response, Docket No. 14.

Defendant Express Scripts, Inc. ("ESI") is a pharmacy benefit manager. ESI contracts with retail pharmacies in order to supply pharmaceutical drugs to the beneficiaries of plans operated by ESI's clients, such as insurance companies. On or about October 30, 2008, ESI issued letters terminating its contract with Grider Drug, effective February 10, 2009. Plaintiffs state that as a result, Plaintiffs Lloyd Krueger, Glenda Downey, Clinton Smith, Peggy Cook, Michael Gilbert, Norman McDonald, Norma Jean Rowe, Dale Dunbar and Lisa Kerr ("Plaintiff Customers"), longstanding Grider Drug customers, had to obtain necessary medications from other pharmacies, adversely affecting both Grider Drug's income and the safety and well-being of its customers.

Plaintiffs also brought suit against Defendants Humana, Inc. ("Humana") and PGBA, LLC ("PGBA"). Humana and PGBA are private corporations that contract with the U.S. Department of Defense ("DoD") to administer TRICARE healthcare benefits. TRICARE is a federal healthcare benefits program.[2] *See* 10 U.S.C. § 1072(7); 32 C.F.R. § 199.17.

Additionally, Plaintiffs have named Kelly Hensley and John Dudinkskie as Defendants. Hensley and Dudinkskie are agents of the Attorney General of the Commonwealth of Kentucky. Plaintiffs allege that Hensley and Dudinkskie engaged in a series of acts to interfere with the patient-pharmacy relationship between Grider Drug and Plaintiff Customers, and to force Plaintiff Customers to seek out other healthcare providers. Plaintiffs also allege that Hensley and Dudinkskie gave false testimony under oath.

ESI removed this action pursuant to 28 U.S.C. § 1442(a)(1), federal officer removal jurisdiction. In the alternative, ESI argues the Court has diversity jurisdiction because all

---

[2] Plaintiffs' Complaint incorrectly asserts that PGBA is doing business as TRICARE.

Defendants properly joined are diverse from all Plaintiffs. Plaintiffs have moved to remand. Defendants have moved to dismiss.

### I.      MOTION TO REMAND

Pursuant to 28 U.S.C. 1442(a)(1), "any officer of the United States . . . or of any agency thereof," "or any person acting under that officer," "sued in an official or individual capacity for any act under color of such office," may remove an action to federal court. *See City of Cookeville v. Upper Cumberland Elec. Membership Corp.*, 484 F.3d 380, 389 (6th Cir. 2007). As the party that removed the action, ESI bears the burden of establishing jurisdiction under section 1442(a)(1). *See, e.g.*, *Village of Oakwood v. State Bank & Trust Co.*, 539 F.3d 373, 377 (6th Cir. 2008).

To qualify for removal, ESI must (1) demonstrate that it is a "person" within the meaning of the statute, 28 U.S.C. § 1442(a)(1); *Brown & Williamson Tobacco Corp. v. Wigland*, 913 F. Supp. 2d 530, 532 (W.D. Ky. 1996), (2) show that it was "'acting under' any 'agency' or 'officer' of the 'United States,'" *Watson v. Philip Morris Comps.*, 551 U.S. 142, 147 (2007) (quoting 28 U.S.C. § 1442(a)(1)), (3) establish a "'causal connection' between the charged conduct and asserted official authority," *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999) (citation omitted), and (4) raise a colorable federal defense, *Mesa v. California*, 489 U.S. 121, 139 (1989); *City of Cookeville*, 484 F.3d at 388-89.

First, ESI must demonstrate that it is a "person" within the meaning of 28 U.S.C. 1442(a)(1). *Brown & Williamson*, 913 F. Supp. 2d at 532. The United States Code provides that unless context indicates otherwise, the word "person" includes a corporation. 1 U.S.C. § 1. The Court finds nothing in the context of 28 U.S.C. § 1442 to indicate that corporations are not

persons. *See also Isaacson v. Dow Chem Co.*, 517 F.3d 129, 135 (2d Cir. 2008). Additionally, Plaintiffs do not challenge ESI's assertion that it is a person within the meaning of the statute. Therefore, for the purposes of federal officer removal statute, the Court finds that ESI is a "person."

Second, ESI must show that it was "'acting under' any 'agency' or 'officer' of the 'United States.'" *Watson*, 551 U.S. at 147 (quoting 28 U.S.C. § 1442(a)(1)). The Supreme Court has recently examined the "acting under" language of the statute and stated that the relationship between a private person "acting under" an agency or officer of the United States involves "'subjection, guidance, or control'" by the federal superior and an effort by the person "to *assist*, or help *carry out*, the duties or tasks of the federal superior." *Watson*, 551 U.S. at 151-52. The Court distinguished between merely complying with the law and helping the Government "produce an item that it needs," "perform[] a job that . . . the Government itself would have had to perform," or "fulfill other basic governmental tasks." *Id.* at 153-54. ESI contends that in performing its duties under its contract with the DoD it was "acting under" an officer of the United States.

The administration of the TRICARE program is the responsibility of the Secretary of the DoD. 10 U.S.C. § 1073. The contract between the DoD and ESI provides as follows:

> This contract is in support of the TRICARE Retail Pharmacy (TRRx) program, a system for the acquisition, delivery, and distribution of prescriptions by the Department of Defense (DoD) on behalf of its beneficiaries through the Government and a contracted Pharmacy Benefit Manager (PBM) with a retail pharmacy network. Department of Defense funds . . . will be used by the PBM to pay for all TRICARE prescriptions and the PBM will be paid negotiated fees for performance of all administrative services under the contract, including providing the retail pharmacy network and acting as a fiscal intermediary for DoD. . . . The PBM will issue DoD funds to pay for each TRICARE prescription after receiving the

> Government's verification of the individual beneficiary's eligibility and authorization for payment. Therefore DoD will be acquiring covered drugs and procuring them for the use of the Federal Government with DoD funds.

According to this contract, ESI helps the DoD acquire, deliver, and distribute prescriptions to beneficiaries. ESI assists by providing the retail pharmacy network and acting as a fiscal intermediary. ESI issues funds to pay for each TRICARE prescription only after receiving verification and authorization from the DoD.

The Supreme Court has stated that "[t]he words 'acting under' are broad, and . . . the statute must be 'liberally construed.'" *Watson*, 551 U.S. at 147; *see also City of Cookeville*, 484 F.3d at 389 n.5. In light of this direction, and the contract between ESI and the DoD, the Court finds that when executing its duties under this contract ESI is "acting under" the Secretary of the DoD because it is performing a job that the DoD otherwise would have to perform.

Third, ESI must establish a "'causal connection' between the charged conduct and asserted official authority." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999) (citation omitted). One opinion within this district discussed this "nexus requirement" and found that it mandates "'a federal officer or agent has direct and detailed control over the defendant' which is satisfied by a showing that the 'state court action is derived from activities performed pursuant to federal direction.'" *Brown & Williamson*, 913 F. Supp. 2d at 532 (quotation omitted).

Here, ESI asserts that it acted at the explicit direction of the DoD in terminating its contract with Grider Drug. Specifically, ESI states that Joel Bartow, the director of program integrity for ESI, contacted DoD subsequent to receiving information that Leon Grider, owner of Grider Drug, was under indictment for giving out illegal prescriptions, drug trafficking and bribing witnesses, and Eric Grider, the pharmacist in charge at one of Grider Drug's locations,

5

was under indictment for Medicaid fraud. After speaking to the prosecutor and being informed that ESI's standard protocol would be to terminate the contract, DoD instructed ESI to terminate Grider Drug. In consideration of these events, which Plaintiffs do not address or dispute, the Court finds that the nexus requirement is satisfied because ESI terminated its contract with Grider Drug pursuant to federal direction from the DoD.

Finally, ESI must raise a colorable federal defense. *Mesa*, 489 U.S. at 139; *City of Cookeville*, 484 F.3d at 388-89. In *Jefferson County*, the Supreme Court explained that the requirement should not be interpreted narrowly and a defendant should not have to win its case before it can have it removed. 527 U.S. at 431. The Court further noted that "'one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court.'" *Id.* (quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)).

ESI has raised three federal defenses: official immunity, preemption, and conflict preemption. With respect to official immunity, ESI argues that its contract with DoD requires it to act as a fiscal intermediary, and fiscal intermediaries of the federal government are entitled to the government's sovereign immunity. Regarding preemption, ESI argues that 32 C.F.R. § 199.21(o) preempts state laws relating to the delivery of medical services to present and former members of the armed services and their families, and the DoD contract requires ESI to provide such services. Addressing conflict preemption, ESI argues that state law is preempted when it is an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, and an award against it under state law would constitute an obstacle. The Court finds these defenses "colorable." *See Jefferson County*, 527 at 431.

Plaintiffs argue that "an action may be removed from state court to federal court only if a

federal district court would have original jurisdiction over the claim in suit." *Id.* at 430. This is the general rule. *Id.* Ordinarily, the federal question "must appear on the face of a properly pleaded complaint; an anticipated or actual federal defense generally does not qualify a case for removal." *Id.* at 431. What Plaintiffs ignore, however, is that under 28 U.S.C. 1442(a)(1) "suits against federal officers [or any person acting under that officer] may be removed despite the nonfederal case of the complaint." *Id.* The Sixth Circuit has explicitly stated that the removal statute "is broad and allows for removal when its elements are met 'regardless of whether the suit could originally have been brought in a federal court.'" *City of Cookville*, 484 F.3d at 389 n.5 (quoting *Willingham*, 395 U.S. at 406).

The Court concludes that ESI has satisfied the elements of the removal statute, 28 U.S.C. 1442(a)(1), and has therefore this action was properly removed.

## II.     MOTIONS TO DISMISS

With respect to Defendants' motions to dismiss, "[w]hen considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)). To survive a Rule 12(b)(6) motion to dismiss, the complaint must include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).

The "[f]actual allegations in the complaint must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* at 1965 (internal citation and quotation marks omitted). "[A] plaintiff's obligation to provide the

grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* A plaintiff must allege sufficient factual allegations to give the defendant fair notice concerning the nature of the claim and the grounds upon which it rests. *Id.* at 1965. Additionally, "the conclusory nature of particular allegations cannot alone justify dismissing a complaint." *Back v. Hall*, 537 F.3d 552, 558 (6th Cir. 2008) (dismissal not appropriate although one essential element of the claim was pled in a conclusory manner).

After careful examination of Plaintiffs' Complaint, the Court finds that the only claims possibly stated are for intentional interference with performance of a contract and perjury.

Paragraph 17 provides:

> That the acts of the Defendants are tortious acts of contractual interference designed to control the rightful decisions of Plaintiffs and to interfere with their rightful patient- pharmacist for medical care and to force upon the Plaintiffs pharmacies and pharmacists for medical care that are not the provider of choice and to benefit the Defendants.

Paragraph 14 provides:

> On or about August 18th, 2006 Hensley and Dudinskie gave knowingly false testimony under oath and made statements for which they knew not to be true and did not believe, and is in violation of the rights of the Plaintiff, Grider Drug.

### A. Intentional Interference with Performance of a Contract

The Restatement (Second) of Torts explains tortious interference with performance of contract by a third person as follows:

> One who intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

Restatement (Second) of Torts § 766 (1979).  Kentucky follows the Restatement (Second) of Torts § 766.  *See Harrodsburg Indus. Warehousing, Inc. v. MIGS, LLC*, 182 S.W.3d 529, 533 (Ky. Ct. App. 2005).  The Supreme Court of Kentucky has also stated that "[u]nder Kentucky law, tort liability exists for the interference with a known contractual relationship, if the interference is malicious or without justification, or is accomplished by some unlawful means such as fraud, deceit, or coercion."  *Steelvest, Inc. v. Scansteel Serv. Center, Inc.*, 807 S.W.2d 476, 487 (Ky. 1991).  Thus, for Plaintiffs to survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), they must allege that (1) a valid contract existed between Plaintiffs and a third party, (2) Defendants had knowledge of Plaintiffs' contract with the third party, (3) Defendants intentionally induced or otherwise caused the third party not to perform its contract with Plaintiffs, and (4) Defendants' conduct was improper.

The tort of interference with a known contractual relationship requires three parties: a Plaintiff, a Defendant, and a third party.  Here, the only reasonable way to interpret Plaintiffs' claim is that they are alleging Hensley and Dudinskie, Defendants, intentionally interfered with the contract between Grider Drug, Plaintiff, and ESI, third party.  ESI cannot interfere with its own contract.  Humana and PGBA may have had a contract with ESI, but no Plaintiff could base a claim on such contract.  The Complaint does not allege that Plaintiff Customers had contracts with any party.  Perhaps they had contracts with Humana or PGBA, but even if they did the Complaint does not allege that the relationships between Plaintiff Customers and Humana or PGBA were interfered with.

In the Complaint, Plaintiffs do not explicitly reference any valid contract between Grider Drug or Plaintiff Customers and a third party, but they do make a vague mention of

9

"agreements" in Paragraph 13:

> On or about April 2006 through the present date, at various times therein, Defendants, Hensley and Dudinskie contacted the numerous companies, including Defendants, PGBA, LLC, d/b/a Tricare and Express Scripts, Inc., and requested that they interfere with the plaintiff's patient/pharmacist relationship by terminating any and all agreements.

In its Motion to Dismiss, ESI assumes that "agreements" refers to the contract between ESI and Grider Drug. Plaintiffs, however, object to this assumption. In their response, Plaintiffs argue that ESI improperly referenced the "alleged contract," and specifically stated that the "alleged contract" did not "relate to any of the Plaintiffs to this action," that it was not "referenced in the Complaint," and it is not "central to the claims therein."

Because Plaintiffs fail to allege that a valid contract existed between them and a third party, they have not stated a claim for interference with a known contractual relationship upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Even taking the allegations in the Complaint as true, and construing it liberally in favor of Plaintiffs, it does not contain enough facts to state a claim to relief that is plausible on its face.

### B.     Perjury

Plaintiffs also allege that Hensley and Dudinskie knowingly gave false testimony under oath. Even assuming this allegation is true, Hensley and Dudinskie would be immune from civil liability because witnesses have immunity from civil damages. *Maggard v. Kentucky Bd. of Examiners*, 282 S.W.3d 301, 303 (Ky. 2008) (stating witnesses immune from liability for civil damages); *Stone v. Glass*, 35 S.W.3d 827, 828 (Ky. Ct. App. 2000) ("[A] witness, even if he knowingly gives false testimony, is entitled to absolute immunity from civil damages."); *Lawson v. Hensley*, 712 S.W.2d 369, 370 (Ky. Ct. App. 1986) (following "general rule that a civil action

for damages will not lie for perjury"). This rule does not change because Hensley and Dudinskie are agents of The Office of the Attorney General for the Commonwealth of Kentucky. *See Todd v. Weltman, Weinberg & Reis Co., L.P.A.*, 434 F.3d 432, 437 (6th Cir. 2006) (citing *Briscoe v. LaHue*, 460 U.S. 325, 345-46 (1983)). Therefore, Plaintiffs have failed to state a claim for perjury upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Remand to Circuit Court (DN 13) is DENIED and Defendants' motions to dismiss (DN 7, 11 and 12) are GRANTED.

An appropriate order shall issue.