# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# BOWLING GREEN DIVISION
# CASE NO. 1:09-cv-00095-R

**GRIDER DRUG, LLC, et al.**                                                            PLAINTIFFS

v.

**EXPRESS SCRIPTS, INC.;**
**PGBA, LLC;**
**KELLY HENSLEY; JOHN DUDINSKIE;**
**and HUMANA, INC.**                                                                     DEFENDANTS

## MEMORANDUM OPINION & ORDER

This matter comes before the Court upon Plaintiffs' Motion to Alter and Amend Judgment and to Amend Complaint (DN 34). Defendants Kelly Hensley and John Dudinkskie, Defendants Humana, Inc. and PGBA, LLC, and Defendant Express Scripts, Inc. have responded (DN 35, 36, 37). Plaintiffs have replied (DN 40, 41, 42). This matter is now ripe for adjudication. For the reasons that follow, Plaintiffs' Motion is DENIED.

Also before the Court is Defendant PGBA, LLC's Motion for Rule 11 Sanctions and/or Relief Pursuant to 28 U.S.C. § 1927 and this Court's Inherent Powers (DN 38) and Defendant Humana, Inc.'s Motion for Rule 11 Sanctions (DN 39). Plaintiffs have responded (DN 43). PGBA, LLC and Humana, Inc. have replied (DN 45, 44). This matter is now ripe for adjudication. For the reasons that follow, Defendant PGBA, LLC's Motion is GRANTED IN PART and Defendant Humana, Inc.'s Motion is GRANTED IN PART.

## BACKGROUND

This action arises out of the termination of a contract. Plaintiff Grider Drug, LLC ("Grider Drug") is a company which operates pharmacies in Russell County, Kentucky. Defendant Express Scripts, Inc. ("ESI" or "Express Scripts") is a pharmacy benefit manager.

ESI contracts with retail pharmacies in order to supply pharmaceutical drugs to the beneficiaries of plans operated by ESI's clients, such as insurance companies. On or about October 30, 2008, ESI issued letters terminating its contract with Grider Drug, effective February 10, 2009. Plaintiffs state that as a result, Plaintiffs Lloyd Krueger, Glenda Downey, Clinton Smith, Peggy Cook, Michael Gilbert, Norman McDonald, Norma Jean Rowe, Dale Dunbar and Lisa Kerr ("Plaintiff Customers"), longstanding Grider Drug customers, had to obtain necessary medications from other pharmacies, adversely affecting both Grider Drug's income and the safety and well-being of its customers.

Plaintiffs also brought suit against Defendants Humana, Inc. ("Humana") and PGBA, LLC ("PGBA"). Humana and PGBA are private corporations that contract with the U.S. Department of Defense ("DoD") to administer TRICARE healthcare benefits. TRICARE is a federal healthcare benefits program.[1] *See* 10 U.S.C. § 1072(7); 32 C.F.R. § 199.17.

Additionally, Plaintiffs have named Kelly Hensley and John Dudinkskie as Defendants. Hensley and Dudinkskie are agents of the Attorney General of the Commonwealth of Kentucky. Plaintiffs allege that Hensley and Dudinkskie engaged in a series of acts to interfere with the patient-pharmacy relationship between Grider Drug and Plaintiff Customers, and to force Plaintiff Customers to seek out other healthcare providers. Plaintiffs also allege that Hensley and Dudinkskie gave false testimony under oath.

ESI removed this action from state court on July 23, 2009. Plaintiffs moved to remand, and Defendants moved to dismiss. On November 18, 2009, the Court denied Plaintiff's Motion for Remand and granted Defendants' Motions to Dismiss, dismissing Plaintiffs' Complaint with

---

[1] Plaintiffs' Complaint incorrectly asserts that PGBA is doing business as TRICARE.

prejudice. Plaintiffs now request that the Court alter its judgment pursuant to Federal Rules of Civil Procedure 59(e) and 60(b), and grant Plaintiffs leave to amend their Complaint pursuant to Federal Rule of Civil Procedure 15(a).

Additionally, both PGBA and Humana have moved for sanctions, arguing that Plaintiffs claims against them are patently unreasonable, unfounded and frivolous given the complete absence of any evidentiary support. They request the Court award them reasonable costs, attorneys' fees and other expenses in defending the lawsuit.

## *I. MOTION TO ALTER AND AMEND JUDGMENT*

### STANDARD

Motions to reconsider under Federal Rule of Civil Procedure Rule 60(b)[2] seek extraordinary judicial relief and can be granted only upon a showing of exceptional circumstances. *McAlpin v. Lexington 76 Auto Truck Stop, Inc.*, 229 F.3d 491, 502-03 (6th Cir. 2000) (citation omitted). The "general purpose" of the rule "is to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done." *Charter Twp. of Muskegon v. City of Muskegon*, 303 F.3d 755, 760 (6th Cir. 2002) (citation omitted). The rule allows a court to relieve a party from a final judgment for the

---

[2] A motion to alter or amend a judgment pursuant to Federal Rule of Civil Procedure 59(e) "must be filed no later than 28 days after the entry of the judgment." Fed R. Civ. P. 59(e). Former Rule 59(e) adopted a ten-day period for filing a motion to alter or amend. The amended rule became effective December 1, 2009. Plaintiffs filed their Motion to Alter or Amend on December 17, 2009, twenty-nine days after the Court's order on November 18, 2009. *See* Fed. R. Civ. P. 6(b). The Court does not have the authority to extend this deadline. Fed. R. Civ. P. 6(b)(2). Therefore, under either measurement, Plaintiffs' Motion pursuant to Rule 59(e) is untimely. "Where a party's Rule 59 motion is not filed within the mandatory . . . period, it is appropriate for a court to consider the motion as a motion pursuant to Rule 60 for relief from judgment." *Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 268 (6th Cir.1998).

3

following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). "[T]he party seeking relief under Rule 60(b) bears the burden of establishing the grounds for such relief by clear and convincing evidence." *Info-Hold, Inc v. Sound Merch., Inc.*, 538 F.3d 448, 454 (6th Cir. 2008). "Relief under Rule 60(b), moreover, is 'circumscribed by public policy favoring finality of judgments and termination of litigation.'" *Doe v. Lexington-Fayette Urban County Gov't*, 407 F.3d 755, 760 (6th Cir. 2005) (quoting *Waifersong Ltd. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir.1992)).[3]

## ANALYSIS

The Court granted Defendants' Motions to Dismiss for two reasons. First, Plaintiffs failed to state a claim for interference with a known contractual relationship because they did not allege that a valid contract existed between them and a third party. Second, Plaintiffs failed to state a claim for perjury against Hensley and Dudinskie because they have immunity from civil

---

[3] Because the Court denies Plaintiffs' Motion to Alter or Amend pursuant to Rule 60(b), it cannot consider Plaintiffs' Motion to Amend the Complaint pursuant to Rule 15(a). *In re Ferro Corp. Derivative Litig.*, 511 F.3d 611, 624 (6th Cir. 2008).

4

damages. In their current motion Plaintiffs entirely fail to address either of these holdings. Plaintiffs reference newly obtained evidence, but do not explain how this evidence relates to either of the Court's holdings. In short, Plaintiffs have not satisfied their burden under Rule 60(b).

## II. MOTION FOR SANCTIONS

### STANDARD

A court may impose sanctions on a party pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and its inherent powers.

Rule 11 requires an attorney to certify "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that "a pleading, written motion, or other paper" (1) "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;" that (2) "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;" that (3) "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and" that (4) "the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information." Fed. R. Civ. P. 11(b). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). The sanction "must be limited to what suffices to deter repetition of the

conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). "[I]f imposed on motion and warranted for effective deterrence," the sanction may include "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4).

In the Sixth Circuit, "the test for the imposition of Rule 11 sanctions is 'whether the individual's conduct was reasonable under the circumstances.'" *Tropf v. Fidelity Nat'l Title Ins. Co.*, 289 F.3d 929, 939 (6th Cir. 2002) (citation omitted). "A good faith belief in the merits of a case is insufficient to avoid sanctions." *Tahfs v. Proctor*, 316 F.3d 584, 594 (6th Cir. 2003). Furthermore, the rule "imposes on litigants a 'continuing duty of candor,' and a litigant may be sanctioned 'for continuing to insist upon a position that is no longer tenable.'" *Rentz v. Dynasty Apparel Indus., Inc.*, 556 F.3d 389, 395 (6th Cir. 2009) (citation omitted).

Additionally, 28 U.S.C. § 1927 "allows a court to require an attorney 'who so multiplies the proceedings in any case unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Rentz*, 556 F.3d at 396 (quoting 28 U.S.C. § 1927). The Sixth Circuit has held:

> [A] court may sanction an attorney under § 1927 for unreasonably and vexatiously multiplying the proceedings "despite the absence of any conscious impropriety." An attorney is therefore sanctionable under § 1927 "without a finding of bad faith, 'at least when an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims.'" However, "'[t]here must be some conduct on the part of the subject attorney that trial judges, applying the collective wisdom of their experience on the bench, could agree falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party.'" Under this objective standard, "§ 1927 sanctions require a showing of something less than subjective bad faith, but something more than negligence or incompetence."

*Id.* (citations omitted). "The purpose of § 1927 is 'to deter dilatory litigation practices and to punish aggressive tactics that far exceed zealous advocacy.'" *Garner v. Cuyahoga*, 554 F.3d 624, 644 (6th Cir. 2009) (citation omitted).

A district court may also "award sanctions pursuant to its inherent powers when bad faith occurs." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002) (citation omitted). "In order to award attorney fees under this bad faith exception, a district court must find that 'the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment.'" *Id.* (citations omitted).

## ANALYSIS

At the root of the Motions for Sanctions is the argument that Plaintiffs' counsel, Robert L. Bertram, misconstrued, and has refused to acknowledge, the actual relationship between Humana, PGBA, ESI, Grider and Plaintiff Customers. PGBA and Humana argue that Bertram did not conduct a reasonable inquiry before filing the Complaint and other motions in this matter, and that he continued to prosecute this action against them even after learning there was no basis for his claim.

Bertram's mischaracterization of PGBA and Humana began when he filed Plaintiffs' Complaint. The only references regarding PGBA and Humana are made in the following paragraphs. As previously noted by the Court, the Complaint incorrectly indicates that PGBA is doing business as TRICARE, and refers to PGBA interchangeably with TRICARE.

> 3. Defendant PGBA, LLC, d/b/a Tricare is a responsible party for its members pharmacy costs on covered prescription drugs and is a direct competitor to numerous pharmacies through its mail order pharmacy and is located at P.O. Box 870141 Surfside Beach, South

> 7. Carolina 29587. Tricare is both self administered and administered through Defendant Express Scripts, specifically for military retirees which covers direct medical care for numerous residents of Russell County Kentucky. Tricare committed the acts complained of within Russell County. Tricare continues to do business in Russell County Kentucky and is within the jurisdiction of the Court.
>
> 7. Defendant, Humana, Inc., is an insurance provider to many local residents of Russell County Kentucky, including the Plaintiffs and is responsible to pay for medications of the Plaintiffs. Humana contracts its service through Defendant Express Scripts and is located at 321 W. Main Street Louisville, Kentucky 40202 whose acts caused a direct and proximate result in Russell County Kentucky and is within the jurisdiction of the Court.
>
> 11. As a direct and proximate result of the request by Defendants Hensley and Dudinskie, Defendants Express Scripts and Tricare mailed a letter to the above named Plaintiffs and directed them to go to a list of medical care providers which they determined or be left without healthcare.
>
> 12. The intent of the Defendants was to interfere with the pharmacy/pharmacist-patient relationship and to force the Plaintiffs to seek out other healthcare providers which were directed by the Defendants for the benefit of the Defendants and for no legitimate purpose.
>
> 13. On or about April 2006 through the present date, at various times therein, Defendants, Hensley and Dudinskie contacted the numerous companies, including Defendants, PGBA, LLC, d/b/a Tricare and Express Scripts, Inc., and requested that they interfere with the plaintiff's patient/pharmacist relationship by terminating any and all agreements.

These paragraphs misstate facts in several respects, including (1) PGBA is not TRICARE, (2) PGBA does not process pharmacy claims, and (3) Humana does not contract its services through ESI. As previously held by the Court, the Complaint also fails to state a claim against either PGBA or Humana.

After the Complaint was filed, counsel for PGBA and Humana, Holland N. McTyeire, V,

8

attempted to explain to Bertram why PGBA and Humana should not be parties to the lawsuit. On August 31, 2009, McTyeire and Bertram exchanged faxed letters. McTyeire explained that "Humana has taken no action to terminate any contract with Grider Drug or to exclude it from any Humana network" and that he was not aware of any "action taken by PGBA with respect to Grider Drug." In response, Bertram succinctly summarized the basis of Plaintiffs claim against PGBA and Humana: "Express Scripts is holding up payments to my client. Humana and PGBA can enforce payments to my client by Express Scripts because they employ Express Scripts and can direct them to make the payments to my client." Furthermore, McTyeire states that during a telephone conference with Bertram on September 18, 2009, Bertram stated that his only basis for claims against PGBA and Humana is his suspicion that they have some control over ESI, but admitted that he had not reviewed any contract which would support any such relationship nor could provide any other reason for his belief that such a relationship exists.

Plaintiffs filed the Motion to Alter and Amend on December 17, 2009. The Motion does not mention PGBA and only refers to Humana in the following excerpt:

> Express Scripts did not interfere with just DOD contracts, Express Scripts represents, according to Express Scripts, "40 or 50" insurance carriers and therefore the acts of the Defendants interfered with all of the private insurance carriers including, but not limited to instant Defendant Humana, having nothing to do with the DOD.

Shortly thereafter, on December 30, McTyeire wrote to Bertram, noting that the motion did not provide any reason for the Court to reconsider its opinion and order as to either PGBA or Humana, and requesting that Plaintiffs file a notice advising the Court that Plaintiffs seek no relief against either Humana or PGBA. Bertram responded on January 7, 2010, collectively referring to PGBA and Humana as "Humana," and refused to recognize no claim had been

stated. He contended that "Humana has failed to pay almost $1,000,000.00 in valid claims to Grider simply because Humana's processing agent, Express Scripts, has blocked the processing of the claims due on behalf of the Plaintiffs and others in this case" and "claims such as prescription drugs are not being allowed to be processed due to Humana's processing agent, Express Script, intentional interference with the patients and Grider Drug." The final written correspondence between the parties was on January 8, in which McTyeire wrote the following:

> We are astonished by your January 7, 2010 letter, in which you continue to claim that Express Scripts, Inc. ("ESI") is the agent of Humana, and that Humana is somehow preventing ESI from paying $1 million in Grider Drug's pharmacy claims. We have explained to you on numerous occasions that ESI is **not** the agent of Humana. Finally, your letter makes little or no effort to explain your continued pursuit of relief against PGBA. . . . [N]either Humana nor PGBA have any influence over ESI and cannot cause it to pay the Grider Drug pharmacy claims.

In the weeks following this letter, Plaintiffs filed their reply to their Motion to Alter and Amend, PGBA and Humana each filed their Motions for Sanctions, to which Plaintiffs responded and PGBA and Humana replied.

As the Court stated above, ESI is a pharmacy benefit manager. ESI contracts with retail pharmacies in order to supply pharmaceutical drugs to the beneficiaries of plans operated by ESI's clients, such as insurance companies. ESI administers the pharmacy benefits for the Kentucky Employees Health Plan ("KEHP"), a self-insured plan for employees of the Commonwealth of Kentucky and their dependants. Most of the Plaintiff Customers are KEHP participants. The administration of KEHP's medical plan and pharmacy benefit plan are run separately, by different contractors. The KEHP medical plan is administered by a Humana subsidiary and KEHP pharmacy benefits are administered by ESI. There is no evidence of any contractual relationship between Humana and ESI.

10

PGBA is a claims processor for Humana Military Healthcare Services and Health Net Federal Services, prime contractors with the DoD. In this subcontractor role, PGBA processes medical claims for the federal healthcare benefits program, TRICARE. ESI administers pharmacy benefits for TRICARE. PGBA does not provide retail pharmacy claims processing services. There is no evidence of any contractual relationship between PGBA and ESI.

Additionally, contrary to Plaintiffs' assertion in their Motion for Remand that Grider has been a member of a network of pharmacies supervised by PGBA, PGBA does not supervise Grider or the network of pharmacies providing care and medication to customers. There is no evidence that PGBA has anything to do with determining which providers are in-network and which providers are not.

With regards to Humana's relationship with Grider, at all times relevant to this lawsuit Grider has had a contract to be in Humana's pharmacy network. Except where a self-funded plan such as KEHP has carved out pharmacy benefits, Humana insureds have been able to fill their prescriptions at Grider and get "in-network" benefits. Humana has taken no action to terminate any provider contract with Grider or exclude it from any Humana pharmacy network. In fact, on October 16, 2009, Grider and Humana entered into a new Pharmacy Provider Agreement. After receiving Grider's returned contract and supplemental answer referencing the litigation, Laura C. White, the Pharmacy Director in Humana Pharmacy Solutions, contacted Mr. Grider to be sure he meant to stay in Humana's pharmacy's network. According to White, Mr. Grider assured her that he understood that his pharmacy remains a participating pharmacy in the Humana network, that Humana does not use ESI as its claims processor, that Humana does not control ESI, and that Humana does not administer the KEHP pharmacy network. Mr. Grider

also complained to White that he could not understand why Bertram insists on suing Humana, and that Grider simply wants to clear its name with regard to what he believes were false allegations spread by certain state officials.

In response to the Motions for Sanctions, Bertram asserts that it is too early for Plaintiffs to be required to provide conclusive evidence of wrongdoing. He continues:

> [T]he documents reviewed by Plaintiffs indicate that Humana and PGBA have acted in concert with ESI to deprive Plaintiffs of the medical services of their choice. ESI is a pharmacy benefits manager which deals with insurance coverage by Humana and PGBA. There is a financial relationship between the parties that Plaintiffs' counsel reasonably believes gives rise to liability on the part of PGBA.

In support of the assertion that Humana and ESI have a relationship, Bertram cites a KEHP update newsletter for the proposition that "Humana and Express Scripts are business partners who partner together with other unnamed companies to third party manage KEHP." The article cited does not support this assertion. It states that Humana and ESI *have* business partners, not that they *are* business partners. Bertram also cites the toll-free number available to KEHP members, which he states is answered by an operator thanking the member for calling "Humana." As Humana points out, however, the KEHP update newsletter explains how the number differentiates between "Option 1 for Humana or Option 2 for Express Scripts." These two refuted pieces of evidence are all Bertram provides to the Court in response to PGBA and Humana's claims that he did not conduct a reasonable inquiry before filing the Complaint and other motions in this matter, and that he continued to prosecute this action against them even after learning there was no basis for his claim.

"As a general proposition, a district court should be hesitant to determine that a party's complaint is in violation of Rule 11(b) when the suit is dismissed pursuant to Rule 12(b)(6) and

there is nothing before the court, save the bare allegations of the complaint." *Tahfs*, 316 F.3d at 594. Here, however, the issue is not just whether Bertram made unsupported claims about actions that PGBA and Humana allegedly took. Bertram filed the Complaint and continued to pursue the action misrepresenting what PGBA and Humana are, and what their relationship is with the other parties to this action. He has provided no support for his assertions, made as recently as the response to Motions for Sanctions, that "Humana and PGBA have acted in concert with ESI to deprive Plaintiffs of the medical services of their choice" and that there is some financial relationship between ESI, PGBA and Humana. Bertram has provided no other reason other than the nonexistent relationship between the parties and ESI to justify naming PGBA and Humana in this action and continuing to pursue claims against them. Nor has Bertram articulated what inquiry he conducted before filing the Complaint and other motions in this action.

  PGBA and Humana have repeatedly attempted to explain to Bertram that they should not be parties in this action. They have provided the Court with evidence that (1) ESI administers the pharmacy benefits for KEHP, (2) Humana administers the KEHP medical plan, (3) ESI is not a subsidiary of Humana, (4) PGBA does not provide retail pharmacy claims processing services, (5) PGBA is not TRICARE, and (6) Humana has a contract with Grider. This information is all publically or otherwise available to Betram. The letters between counsel also reveal that instead of conducting further inquiry or explaining how Plaintiffs' factual contentions regarding PGBA and Humana had evidentiary support, Bertram insisted upon the untenable position that Humana and PGBA were in an employer-employee or principal-agent relationship. The Court notes that this reasoning is not articulated in the Complaint. Furthermore, Bertram's communications

13

imply that his true motive for keeping PGBA and Humana in the lawsuit was the hope that they could exert pressure on ESI. Even Mr. Grider, allegedly expressed confusion as to why Betram insisted on suing Humana.

The Court finds that Bertram violated Rule 11 when he pursued this action against PGBA and Humana without any evidentiary support that they had a relationship with ESI or in any way interfered with Plaintiff Customers's ability to obtain benefits at Grider. Rule 11 permits the Court to impose an appropriate sanction on any attorney or party that violated the rule or is responsible for the violation. The sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated," but may include "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4).

Bertram's conduct was not reasonable under the circumstances. He continued to insist upon including PGBA and Humana in the lawsuit even when that position was not tenable. Bertram has provided no evidence or explanation to the Court for why he claims PGBA and Humana "acted in concert with ESI" or why they otherwise should be named as defendants. Plaintiffs are also responsible for the actions of their attorney. Therefore, in order to deter repetition of the conduct or comparable conduct by others similarly situated, Bertram and Plaintiffs must each pay $2,500, for a total of $5,000, to be divided evenly between PGBA and Humana. The Court notes that PGBA and Humana requested sanctions equaling the reasonable costs, attorneys' fees and other expenses they incurred defending this lawsuit. The Court finds that the sanction imposed is appropriate and sufficient to satisfy the purpose of Rule 11.

The Court declines to issue sanctions pursuant to 28 U.S.C. § 1927 or the Court's

inherent powers. The Court does not consider filing one Motion to Alter or Amend, no matter how unsupported, unreasonably and vexatiously multiplying the proceedings. Additionally, while the Court finds Bertram's assertions unfounded, there is not proof of bad faith sufficient to warrant sanctions pursuant to the Court's inherent powers.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED:

(1) Plaintiffs' Motion to Alter and Amend Judgment and to Amend Complaint (DN 34) is DENIED;

(2) Defendant PGBA, LLC's Motion for Rule 11 Sanctions and/or Relief Pursuant to 28 U.S.C. § 1927 and this Court's Inherent Powers (DN 38) is GRANTED IN PART;

(3) Defendant Humana, Inc.'s Motion for Rule 11 Sanctions (DN 39) is GRANTED IN PART;

(4) Plaintiffs' counsel, Robert L. Bertram, shall pay a total of $2,500 to PGBA and Humana; and

(5) Plaintiffs shall pay a total of $2,500 to PGBA and Humana.